**THE HONORABLE LAUREN J. KING**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

ALLIANCE FOR AUTOMOTIVE
INNOVATION,

        Plaintiff,

    v.

MARCUS GLASPER, in his official capacity as
Director of Washington Department of
Licensing; WASHINGTON STATE
DEPARTMENT OF LICENSING,

        Defendants.

**Case No.:  2:25-cv-00750-LK**

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR:**

**August 7, 2026, per Court Ordered Briefing
Schedule (Dkt. 50)**

**ORAL ARGUMENT REQUESTED**

Motion for Summary Judgment - Page | 1
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 4

LEGAL STANDARD ............................................................................................................ 6

STATEMENT OF UNDISPUTED FACTS ........................................................................... 6

OVERVIEW OF CLAIMS .................................................................................................. 10

ARGUMENT ....................................................................................................................... 12

I.   WAC 110(2)(b) is Preempted by the Automobile Information Disclosure Act of 1958........ 12

    A.   WAC 110(2)(b) is Conflict Preempted. ................................................................. 13

II.  WAC 308-66-110(2)(b) is Unconstitutional Under the First Amendment. ........................... 14

    A.   The Scope of WAC 110(2)(b). ............................................................................... 15

    B.   Unconstitutional Applications of WAC 110(2)(b). ................................................ 15

        1.   Strict Scrutiny Applies and is Not Satisfied. ............................................. 15

        2.   WAC 110(2)(b) Fails Intermediate Scrutiny. ............................................ 17

    C.   Measurement Against Its "Plainly Legitimate Sweep." ........................................ 19

III. WAC 308-66-110(19) is Unconstitutional Under the First Amendment. ............................... 20

    A.   The Scope of WAC 110(19). .................................................................................. 20

    B.   Unconstitutional Applications of WAC 110(19). ................................................... 20

    C.   Measurement Against Its "Plainly Legitimate Sweep." ........................................ 21

IV. WAC 308-66-110(2)(b) and 110(19) Are Void for Vagueness Under the Due Process Clause ................................................................................................................................. 22

    A.   Due Process ............................................................................................................ 22

        1.   Void for Vagueness - WAC 110(2)(b) ....................................................... 23

        2.   Arbitrary and Discriminatory Enforcement - WAC 110(2)(b). ................ 23

        3.   Void for Vagueness - WAC 110(19). ........................................................ 24

        4.   Arbitrary and Discriminatory Enforcement - WAC 110(19).................... 24

V.  WAC 308-66-110(2)(b) and 110(19) Are Invalid Under the Washington APA. .................. 25

Motion for Summary Judgment - Page | 2
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

A.      The Department Exceeded its Statutory Authority (Ultra Vires). ........................ 25

    1.      WAC 110(2)(b) Exceeded Statutory Authority. ...................................... 26

    2.      WAC  110(19) Exceeded Statutory Authority. ....................................... 26

B.      The Department Acted Arbitrarily and Capriciously ........................................... 27

    1.      WAC 110(2)(b) Is Arbitrary and Capricious. ......................................... 27

CONCLUSION ................................................................................................................. 29

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

## **<u>INTRODUCTION</u>**

In January 2025, the Department of Licensing (the "Department") adopted two rules that directly regulate what vehicle manufacturers in Washington may, cannot, and must say to the public about their vehicles. The rules are impermissibly vague, unconstitutional, and worst yet, come with a steep price if disobeyed: criminal enforcement.

The first rule, WAC 308-66-110(2)(b), makes it unlawful for auto manufacturers to "discuss[]" vehicle price, purchase terms, financing, inventory availability, or trade-ins "on behalf of another person." Under Washington's motor vehicle franchise system, those "other" persons are their franchised dealers, and consistent with this longstanding regime, manufacturers routinely provide consumers with broad, truthful information about vehicles those dealers sell to purchasers. These communications occur through websites, brochures, FAQs, product pages, videos, press materials, auto shows, social media, and responses to consumer or media inquiries. Therefore, this new rule dictates the content of ordinary manufacturer communications—which consumers rely on when researching vehicles—whenever the Department concludes those communications constitute "soliciting." It also bans speech the federal government requires manufacturers to make, including pricing disclosures on the "Monroney Labels" that manufacturers must affix to vehicle windows.

The second rule, WAC 308-66-110(19), creates a new category of "public education." It dictates that manufacturers, when "displaying" or "demonstrating" vehicles, must take "reasonable steps" to inform the public that they may not engage in "motor vehicle dealer business activity." This is compelled speech, but the rule does not define "displaying," "demonstrating," or "reasonable steps." Therefore, it does not explain when ordinary communications that assist consumers in researching their vehicle purchases trigger the compelled disclosure, what form the disclosure must take, or how the Department will decide whether a manufacturer has complied with this new dictate. Again, that is particularly concerning in the context of a rule that ultimately reaches criminal heights if violated.

---

Motion for Summary Judgment - Page | 4
(Case No. 2:25-cv-00750-LK)

The Department has not provided any government interest in justifying these regulations on the content of vehicle manufacturers' speech. To be clear, the Certified Agency Record (the "Record") is bereft of any such rationale. The only explanation the Department included in the Record is its rationale for amending the old definitions, which it claimed were "ambiguous" and caused "confusion" and "compliance" issues among industry members. The Record, however, does not even support this assertion. It contains no enforcement actions, investigations, warning letters, citations, or prosecutions involving manufacturer discussions of vehicle pricing or related topics under the prior framework. It contains no consumer complaints alleging confusion caused by manufacturer communications about price, purchase terms, financing, inventory availability, or trade-ins. And at the Department's public hearing, no witness identified any actual confusion, ambiguity, non-compliance, consumer harm, or statutory objective that the Department could advance any rule change, let alone rules restricting or compelling manufacturers' speech.

Instead, the Record shows a different problem. The Department undertook this rulemaking after discussions concerning direct sales, demonstration drives, and concerns about whether electric-vehicle manufacturers Rivian and Lucid could interact with Washington consumers *outside the dealer-franchise model*. But the Department never received legislative authorization to rewrite that framework by regulation. Indeed, a Washington state court has already invalidated WAC 308-66-110(19) for exceeding the Department's statutory authority, and the Washington Legislature addressed those issues regarding Rivian and Lucid, which motivated the Department's rulemaking, by passing Senate Bill 6354 in its most recent session.

This Court should invalidate both rules. WAC 110(2)(b) is preempted by federal law because it conflicts with the Automobile Information Disclosure Act's mandatory pricing disclosures. It also imposes content-based and speaker-based restrictions on truthful commercial speech without record evidence of any, much less a compelling or substantial, governmental interest. WAC 110(19) separately compels manufacturers to deliver a state-prescribed legal message without justification and without defining the conduct that triggers the obligation. Both

Motion for Summary Judgment - Page | 5
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

rules are void for vagueness because they fail to give regulated parties fair notice of what constitutes a violation and invite standardless enforcement. And both are invalid under the Washington Administrative Procedure Act because they exceed the Department's statutory authority and are arbitrary and capricious. Summary judgment should be granted.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the absence of a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is met, the nonmoving party must come forward with evidence sufficient to establish a genuine issue for trial; the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if the evidence would allow a reasonable trier of fact to return a verdict for the nonmoving party, and "material" only if it might affect the outcome. *Id*. at 248.

## STATEMENT OF UNDISPUTED FACTS

1. Before adopting WAC 308-66-110(2)(b) ("WAC 110(2)(b)") and WAC 308-66-110(19) ("WAC 110(19)"), Washington regulated manufacturers and dealers without prohibiting manufacturers from discussing vehicle pricing, terms of purchase, inventory availability, financing, or trade-ins in public communications.

2. RCW 46.70 provides a comprehensive regulatory regime governing the distribution and sale of motor vehicles, including the licensing of dealers and manufacturers. *See* Wash. Rev. Code ch. 46.70. The Legislature declared this framework necessary "to regulate and license vehicle manufacturers … and to regulate and license dealers of vehicles … in order to prevent frauds, impositions, and other abuses upon its citizens." Wash. Rev. Code § 46.70.005.

3. Consistent with that purpose, the Legislature prohibited unlicensed activity. Accordingly, it is unlawful for any person to "act as a vehicle dealer or vehicle manufacturer …

Motion for Summary Judgment - Page | 6
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

or serve in the capacity of such" without first obtaining a license. Wash. Rev. Code § 46.70.021(1).

4. A "vehicle dealer" includes "any person … engaged in the business of buying, selling, listing, exchanging, offering, brokering, leasing with an option to purchase, auctioning, soliciting, or advertising the sale of new or used vehicles . . . ." Wash. Rev. Code § 46.70.011(17). And includes such activity "on behalf of others." *Id.*

5. As a general rule, it is unlawful for a manufacturer to act "in the capacity of a new motor vehicle dealer." Wash. Rev. Code § 46.96.185(1)(g). The Legislature, however, recently created an exception to this prohibition, effective June 11, 2026, that allows manufacturers like Lucid and Rivian to sell vehicles directly to the public. Wash. Rev. Code § 46.96.185(1)(g)(vii).

6. In August 2022, counsel for Lucid USA contacted the Department to ask whether a vehicle manufacturer, who is not a licensed vehicle dealer, could "demonstrate their vehicles to the general public and offer demonstrative drives[,]" for "purely educational purposes." Declaration of Jonathan Stulberg (Stulberg Decl.) at ¶ 3. A compliance officer for the Department responded, "the conduct you described would be a violation of Washington State dealer/manufacturer laws under RCW 46.70.021(11)" which says "it is unlawful for any person . . . to act as a vehicle dealer . . . without first obtaining and holding a current license as provided in this chapter[.]" *Id.*

7. A year later, in November 2023, the Department met with the Governor's Office to discuss direct sales by vehicle manufacturers, litigation with Lucid USA, meeting with Rivian, and rulemaking to allow test drives for electric vehicles. *Id.* at ¶ 3, 4. After the meeting with the Department, a staff member from the Governor's Office asked if the Department could address demonstration drives through rulemaking. *Id.* at ¶ 3.

8. On February 15, 2024, Senate Bill 6304, which would have allowed direct sales to consumers by electric vehicle manufacturers like Rivian and Lucid, failed to advance in the Washington Legislature. The same day, Bill Dutra, an administrator at the Department, circulated

Motion for Summary Judgment - Page | 7
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

a 16-page legal memorandum to Beau Perschbacher, another Department employee, entitled "Rivian Advice Memo," prepared for Mr. Dutra by the Washington Attorney General's Office. The Department withheld the contents of this memorandum based on attorney-client privilege. *Id.* at ¶ 5.

9. On April 2, 2024, the Governor's Office approved the Department's plan regarding "rulemaking on the topic of vehicle dealers and manufacturers," which included amending WAC 308-66-110. *Id*. at ¶ 6. On April 5, 2024, Hannah Steinweg, Rivian's public policy representative, emailed Beau Perschbacher to "thank you for your time a couple days ago" and to request information to help Rivian get "everything together for our sync in the coming weeks[.]" *Id.* at ¶ 7 (CAR, 480).

10. On April 17, 2024, the Department filed a Preproposal Statement of Inquiry (CR-101) announcing that "definitions related to vehicle dealers and manufacturers" would be a subject of possible rulemaking. CAR, 2. The CR-101 stated the following reasons for why rules on this subject may be needed: "ambiguity in the definition of a vehicle dealer versus a manufacturer, and what activities each business type is allowed to participate in[,] . . . has led to confusion and issues among industry members, requiring opinions from the Attorney General's office." The Department stated rulemaking is being considered "to further define each type of business practice to provide clarity for industry members on allowable activities." CAR, 2.

11. On October 22, 2024, the Department filed a Proposed Rule Making (CR-102). CAR, 5. The CR-102 stated as its purpose for the proposal and anticipated effects as follows: "This rule seeks to improve regulatory compliance for vehicle dealers and manufacturers by clarifying definitions related to certain vehicle dealer and manufacturer activities under Chapter 46.70 RCW[.] The proposed amendment further defines the "soliciting" of a sale and creates a new definition for the act of "public education." Additionally, the proposed amendment adds examples of what constitutes "public education." CAR, 5.

Motion for Summary Judgment - Page | 8
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

12. On December 6, 2024, the Department held a public hearing on rulemaking for WAC 308-66-110. CAR, 15. At the hearing, no witness identified any "confusion," "ambiguity," or "non-compliance" by dealers or manufacturers, or testified that manufacturers' speech had misled customers, interfered with dealer operations, or undermined any statutory objective. CAR 15 to 29. The Record does not contain any enforcement actions, investigations, warning letters, citations, or prosecutions against manufacturers for "discussing" vehicle price or related topics under the prior regulatory framework. CAR 1 to 654. The Record does not contain any consumer complaints alleging confusion caused by manufacturer communications regarding pricing, terms, financing, availability, or trade-in information. CAR 1 to 654.

13. The Record contains 228 public comments submitted before the hearing. CAR 30 to 64. Among those comments, 218 are from private citizens who specifically advocate for a change to WAC 308-66-110 to allow for "test drives" and/or for the entire dismantling of the dealer franchise system. *Id.*; *see also* CAR 65 to 340.

14. On December 20, 2024, the Department published its Rule Making Order, CR-103. CAR, 635. On January 20, 2025, the Department's adoption of WAC 110(2)(b) and WAC 110(19) became effective.

15. WAC 110(2)(b) amended the term "Soliciting" by adding section (b) to its existing definition: "(a) An offer to effect the purchase or sale of a vehicle on behalf of another person. (b) Discussing any of the following topics on behalf of another person: (i) The price of a vehicle; (ii) Terms of purchase; (iii) Prospective financing; (iv) Availability of vehicles for purchase; or (v) Vehicle trade-ins." CAR, 642.

16. WAC 110(19) added and defined the new term "Public Education" to mean: "increasing the public's knowledge of a vehicle's specifications, features, and capabilities, but does not include any activities in RCW 46.70.011(17). (a) When displaying or demonstrating vehicles for public education purposes, a licensed manufacturer must take reasonable steps to inform the public that the manufacturer may not engage in any motor vehicle business activity, as

Motion for Summary Judgment - Page | 9
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

defined in RCW 46.70.011(17). (b) The following activities are examples of public education: (i) The display of vehicles in a facility owned, leased, rented, or operated by a licensed manufacturer that prominently posts legible signs throughout such facility stating that the vehicles cannot be sold. (ii) The display of vehicles by a museum. (iii) A representative from a licensed manufacturer driving a vehicle that is clearly marked as "not for sale" for the sole purpose of displaying, discussing, or demonstrating the vehicle's specifications, features, and capabilities. (c) Public education is not considered a motor vehicle dealer business activity that requires licensure." CAR, 647-48.

17.    As part of ordinary business operations, manufacturers communicate with the public about new vehicles, including price, financing options, terms of sale, availability, and value for trade-ins, and engage in communications intended to increase the public's knowledge of its vehicles' specifications, features, and capabilities. These communications are disseminated through channels such as websites, product pages, press materials, auto shows, social media, and responses to customer inquiries or media inquiries. CAR, 18-19, 349-350.

18.    The Department has taken the position that manufacturer "display" of pricing information may constitute prohibited "discussion" under WAC 110(2)(b) in certain circumstances. Stulberg Decl. at ¶ 8.

## **OVERVIEW OF CLAIMS**

Plaintiff brings five claims challenging WAC 110(2)(b) and WAC 110(19) on federal constitutional, federal preemption, and state-law grounds. Summary judgment is appropriate on all claims because the material facts are undisputed and no government interest justifies these new content-based regulations on manufacturers' speech.

**Claim One** challenges WAC 110(2)(b) under the Supremacy Clause. The regulation is preempted by the Automobile Information Disclosure Act of 1958 (the "AIDA"), 15 U.S.C. §§ 1231–1233, because compliance with both federal and state law is impossible. The AIDA requires manufacturers to affix a "Monroney Label" disclosing the Manufacturer's Suggested Retail Price

Motion for Summary Judgment - Page | 10                    Shook, Hardy& Bacon L.L.P.
(Case No. 2:25-cv-00750-LK)                                      701 5th Avenue, Suite 6800
                                                                Seattle, WA 98104-7066
                                                                206.344.7600

("MSRP") to new vehicles prior to delivery to dealers, and the labels must remain affixed while the vehicles are offered for sale. 15 U.S.C. §§ 1232, 1233(c). WAC 110(2)(b), however, prohibits manufacturers from "discussing" vehicle pricing, which the Department contends may include the display of MSRP under a "totality of the circumstances" standard, "on behalf of another person," which presumably includes licensed dealers. Because manufacturers cannot simultaneously comply with federal law (which compels disclosure) and state law (which prohibits it), WAC 110(2)(b) is preempted and must be invalidated.

**Claims Two and Three** challenge WAC 110(2)(b) and WAC 110(19), respectively, under the First Amendment. WAC 110(2)(b) imposes content-based and speaker-based prohibitions on truthful commercial speech by categorically banning certain manufacturers from discussing vehicle price, purchase terms, financing, inventory availability, and trade-ins when the vehicles are sold by dealers. But it does not prevent other manufacturers and dealers from discussing these same topics when they are showing vehicles or selling vehicles directly to purchasers. Further, WAC 110(19) compels manufacturers to disclaim all "motor vehicle dealer business activity" whenever they are "displaying" or "demonstrating" vehicles to the public. Both regulations are subject to and fail strict scrutiny as content-based regulations of speech because the Department has not provided any governmental interest, let alone a compelling one, for these regulations. The regulations also are not narrowly tailored to any such purpose, and less restrictive alternatives exist for achieving the clarifications the government stated were needed for the pre-existing rules.

**Claim Four** challenges both WAC 110(2)(b) and WAC 110(19) as void for vagueness under the Fifth and Fourteenth Amendments. WAC 110(2)(b) fails to define "discussing" and authorizes enforcement under a standardless "totality of the circumstances" approach, leaving manufacturers to guess what speech will trigger criminal sanctions. WAC 110(19) similarly fails to define "displaying," "demonstrating," or "reasonable steps," creating uncertainty about both when the disclosure obligation is triggered and what compliance requires. Because both

Motion for Summary Judgment - Page | 11
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

regulations criminalize speech without providing fair notice of prohibited or compelled conduct and invite arbitrary enforcement, they violate the Due Process Clause.

**Claim Five** challenges both regulations under the Washington Administrative Procedure Act, RCW 34.05.570. WAC 110(2)(b) and WAC 110(19) exceed the Department's statutory authority under RCW 46.70.160, are arbitrary and capricious because the Record contains no evidence supporting the rule changes or the confusion, ambiguity, or non-compliance the Department relied upon to justify the decision to engage in this rulemaking.

These claims are independent and alternative. Success on any one claim requires invalidation of the challenged regulation.

<u>ARGUMENT</u>

**I.    WAC 110(2)(b) is Preempted by the Automobile Information Disclosure Act of 1958.**

WAC 110(2)(b) is conflict preempted by the AIDA because compliance with both laws is impossible and WAC 110(2)(b) stands as an obstacle to Congress's purposes and objectives in enacting the AIDA. *See United States v. Locke*, 529 U.S. 89, 109 (2000). Where, as here, the text of the regulation creates a conflict, a facial challenge can succeed. *See Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) (facial challenge upheld where Massachusetts law undermined the intended purpose and natural effect of the federal law); *see also Arizona v. United States*, 567 U.S. 387 (2012) (preempting multiple provisions of Arizona law before going into effect).

"The laws of the United States . . . shall be the supreme law of the land." U.S. CONST. art. VI, cl. 2. The Supremacy Clause preempts state statutes that conflict with federal law. *Locke*, 529 U.S. at 109 (preemption may arise when "compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."); *see also Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (same); *Mutual Pharmaceutical Co., Inc. v. Bartlett,* 570 U.S. 472, 480 (2013) (state laws that conflict with federal law are without effect).

Motion for Summary Judgment - Page | 12
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

Where "compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce[,]" a "holding of federal exclusion of state law is inescapable and requires no inquiry into congressional design." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963). And although the Supreme Court has applied a "presumption against preemption" in areas of traditional state regulation (*see Jones v. Rath Packing Co.¸* 430 U.S. 519, 525 (1977)), that 'presumption' does not apply in areas of traditional federal regulation, including the types of economic regulation and consumer protection in interstate commerce at issue in this case. *Locke*, 529 U.S. at 108 ("No artificial presumption aids us in determining the scope of appropriate local regulation" where the state laws in question did not bear upon an area in which the State exercised its police powers).

### A.    WAC 110(2)(b) is Conflict Preempted.

Compliance with both WAC 110(2)(b) and the AIDA is impossible, and WAC 110(2)(b) stands as an obstacle to Congress's purpose and objectives in enacting the AIDA. The AIDA requires "the full and fair disclosure of certain information in connection with the distribution of new automobiles in commerce, and for other purposes." *See* Public Law 85-506. To achieve its purpose, the AIDA requires vehicle manufacturers to affix a window sticker, or "Monroney Label," containing information such as the "Manufacturer's Suggested Retail Price" ("MSRP"). The Monroney Label must remain on the vehicle throughout the sales process, including after title transfers to the dealer, during the vehicle sale to the customer by the dealer, and through to the "ultimate purchaser" taking possession. 15 U.S.C. §§ 1232, 1233(c). Any person who violates the AIDA "shall be fined not more than $1,000" and "[s]uch failure with respect to each automobile shall constitute a separate offense." 15 U.S.C. § 1233(a).

WAC 110(2)(b) creates a conflict with the AIDA by prohibiting manufacturers from discussing, among other things, vehicle price on behalf of the dealer. A manufacturer who violates WAC 110(2)(b) is "guilty of a gross misdemeanor, and upon conviction subject to a fine of up to five thousand dollars for each violation and up to three hundred sixty-four days in jail." RCW §

Motion for Summary Judgment - Page | 13
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

46.70.021(1), (3); *see also* RCW 46.96.185(1)(g) (manufacturers are prohibited from acting in the capacity of a new motor vehicle dealer which includes "soliciting").

That is conflict preemption. A manufacturer cannot comply with AIDA without affixing and preserving the Monroney Label throughout the dealer's sale of that vehicle to the purchaser. Yet, this federally compelled disclosure runs afoul of the prohibitions in WAC 110(2)(b) barring manufacturers from discussing with consumers the price of the vehicle they are considering purchasing from the dealer. To be clear, the Department has already asserted that a manufacturer's display of MSRP may constitute prohibited "discussion" depending on the "facts specific to each individual circumstance." Stulberg Decl. ¶ 8, Exhibit 7 at p. 2. No lawful path remains.

Because WAC 110(2)(b) places manufacturers in the position of violating federal law to comply with state law, it is preempted. *See, e.g., Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691 (1984) (Oklahoma law banning wine commercials preempted by the FCC's "must-carry" rules because state cable operators were subject to criminal prosecution due to their compliance with federal regulations); *see also Michigan Canners & Freezers Assn., Inc. v. Agricultural Marketing and Bargaining Bd.*, 467 U.S. 461, 478 (1984) (Michigan law conflict preempted because it authorized state producers' associations "to engage in conduct that the federal act forbids" and stood "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."). Moreover, WAC 110(2)(b) stands as an obstacle to the accomplishment of Congress's objectives in enacting the AIDA: ensuring "full and fair disclosure" of pricing information to consumers. By chilling manufacturer pricing communications beyond the physical Monroney Label—including on websites, brochures, and other media where consumers research vehicle purchases—WAC 110(2)(b) frustrates the federal statutory purpose of informed consumer choice.

**II.    WAC 308-66-110(2)(b) is Unconstitutional Under the First Amendment.**

WAC 110(2)(b) is unconstitutional under the First Amendment because it imposes content and speaker-based restrictions on speech without any justifiable state interest. Because it is

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

content and speaker-based, the regulation is subject to strict scrutiny and fails this test because the Department has not provided any, let alone a compelling, interest in regulating the manufacturers' speech. At the very least, the rule is subject to and fails intermediate scrutiny because it regulates protected commercial speech and provides no substantial state interest. This is a facial challenge, meaning the Court must first determine whether a substantial number of the law's applications are unconstitutional in relation to its "plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. __ (2024), 144 S. Ct. 2383, 2397 (2024). This requires assessing the law's scope, deciding which applications violate the First Amendment under the applicable doctrine, and measuring them against the rest. *Id.* at 2397-98.[1]

### A.    The Scope of WAC 110(2)(b).

WAC 110(2)(b) prohibits manufacturers from "discussing" the price of a vehicle, terms of purchase, prospective financing, availability of vehicles for purchase, or vehicle trade-ins when those vehicles are not sold by the manufacturers themselves, meaning the discussions happen "on behalf of another person." *See* WAC 308-66-110(2)(b); RCW 46.96.185(1)(g). This prohibition applies regardless of who that information is discussed with, what is said about each prohibited category, as well as where, when, why, and/or how that discussion occurs. WAC 110(2)(b) does not apply to vehicle dealers, and a special subset of manufacturers permitted to obtain dealer licenses. These entities remain free to engage in discussions in all such categories of speech for any purpose and through any medium or platform without restrictions.

### B.    Unconstitutional Applications of WAC 110(2)(b).

#### 1.    Strict Scrutiny Applies and is Not Satisfied.

Content-based restrictions on speech are presumptively unconstitutional and subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163-65 (2015). A law is content based if it "target[s] speech based on its communicative content." *Id.* Speaker-based restrictions are also subject to heightened scrutiny. *Citizens United v. Federal Election Com'n,* 558 U.S. 310, 340

---

[1] *United States v. Salerno*, 481 U.S. 739 (1987) does not apply because Plaintiff's claim arises in the First Amendment context.

(2010) ("Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others".) Here, WAC 110(2)(b) is content based and speaker based because it prohibits discussion of specific subject matters and applies only to manufacturers who sell only to dealers under Washington's regulatory regime; dealers and manufacturers that show vehicles or sell them directly to consumers may discuss the very same topics. *See, e.g.,* RCW §§ 46.70.011(17); 46.70.045; 46.96.185(1)(g) (defining "dealer" as anyone engaged in "soliciting" the sale of vehicles while prohibiting manufacturers, upon penalty of license revocation, imprisonment, or fines, from acting in the capacity of a dealer).

Because strict scrutiny applies, the Department must prove its speech restriction (1) concerns a compelling state interest, (2) is narrowly tailored to serve the compelling state interest, and (3) is the least restrictive means of achieving that interest. *Reed*, 576 U.S. at 171; *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). The U.S. Supreme Court has "emphasized that 'it is the rare case'" in which a State can identify a compelling interest to justify content-based restrictions of protected speech. *See Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015). Moreover, "[t]he State must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution," which is a "demanding standard." *Brown v. Entertainment Merchants Ass'n.*, 564 U.S. 786, 799 (2011); *see also Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) ("When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms . . . [i]t must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.").

Here, the Department never articulated a government interest in restricting manufacturers' speech. To be clear: *the Record is bereft of any such justification*. The Record contains no history of compliance issues or enforcement actions, no studies, reports, or analyses concerning the need to regulate the content of manufacturers' speech. The only "interest" stated by the Department stems from the reasons the Department provided for revising the prior definitions. These reasons

Motion for Summary Judgment - Page | 16
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

were: "[clarification] related to certain vehicle and manufacturer activities" for the purpose of "improv[ing] regulatory compliance." However, the Record does not even support this "interest" and, even if it did, such administrative convenience would not justify content-based or speaker-based regulations on speech. *See Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 614-615 (2021) ("[E]ase of administration" and "administrative convenience" did not justify California's disclosure requirement burdening speech).

WAC 110(2)(b) is also not narrowly tailored or the least restrictive alternative available to address any compelling government interest, particularly given that none has been stated for restricting speech. If the government interest at issue is the purported problems of ambiguity, confusion or compliance, there are more tailored ways to achieve this goal than suppressing (i) truthful speech across all media with no limiting principle and (ii) accurate commercial information that enables informed consumer choice. For instance, the Department did not limit WAC 110(2)(b) to only deceptive speech or speech tied to an unlawful sales transaction. Nor did it consider express conduct-based alternatives, such as prohibiting manufacturers from negotiating or consummating retail sales, that would address any legitimate interest without suppressing truthful speech. A rule that prohibits public discussion of an "entire topic" is not narrowly tailored nor the least restrictive means available and cannot withstand strict scrutiny. *See Reed*, 576 U.S. at 182 (Kagan, J., concurring); *see also Ashcroft*, 542 U.S. at 666 (Courts should ask "what is the least restrictive alternative that can be used to achieve that goal" because "[t]he purpose . . . is to ensure that speech is restricted no further than necessary to achieve the goal, for it is important to ensure that legitimate speech is not chilled or punished."). For the foregoing reasons, WAC 110(2)(b) is unconstitutional under strict scrutiny.

### 2. WAC 110(2)(b) Fails Intermediate Scrutiny.

WAC 110(2)(b) also fails intermediate scrutiny, the test for which was articulated in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980). Under *Central Hudson*, a court must first "determine whether the expression is protected by the

---

Motion for Summary Judgment - Page | 17
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

First Amendment." *Id.* The Court explained that "commercial speech [comes] within this provision" when it "concern[s] lawful activity and [is not] misleading." *Id.* Next, the court "ask[s] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, [the court] must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.* The government bears the burden to justify the restriction under each prong. *Edenfield v. Fane¸* 507 U.S. 761, 770 (1993) ("It is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it.") (citation modified).

WAC 110(2)(b) targets speech concerning lawful commercial activity by prohibiting discussions about vehicle pricing, purchase terms, financing options, availability, and trade-ins on behalf of another person. The regulation does not target false, deceptive, or misleading statements, or consumer fraud. Thus, the first prong of *Central Hudson* is satisfied; the speech at issue here is protected. *See Central Hudson,* 447 U.S. at 566. And, as explained in Section II.B.1, the Department has not articulated *any* government interest in restricting manufacturers' speech. The only potential interest would be administrative convenience, which is not "substantial." *See Americans for Prosperity Foundation*, 594 U.S. at 614-615; *see also Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 374 (2002) ("The *Central Hudson* test is significantly stricter than the rational basis test[.]"). WAC 110(2)(b) therefore fails the second prong of *Central Hudson*.

Even if administrative convenience could be a "substantial" interest, the Department has not shown and cannot show WAC 110(2)(b) materially advances that interest. *See Edenfield*, 507 U.S. at 770-71; *Western States Med. Ctr.*, 535 U.S. at 374 (speculation and conjecture are insufficient). Here, the Record contains no evidence of confusion, ambiguity, non-compliance, consumer harm, or enforcement difficulty, let alone that these manufacturer speech prohibitions address these concerns. Consequently, WAC 110(2)(b) fails *Central Hudson*'s third prong. *See Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188-89 (1999) (a speech

Motion for Summary Judgment - Page | 18
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

restriction fails this prong where the government cannot show that it will materially alleviate the alleged harm).

Finally, because more limited restrictions could serve the Department's interest in clarifying any confusion that it asserts exists under the current regulations, broad prohibitions on speech like WAC 110(2)(b) cannot survive. *Central Hudson,* 447 U.S. at 564-66. The government must demonstrate that it seriously considered—and reasonably rejected—less restrictive alternatives before resorting to a categorical ban on speech. *Western States Med. Ctr.*, 535 U.S. at 373 ("If the First Amendment means anything, it means that regulating speech must be a last— not first—resort. Yet here it seems to have been the first strategy the Government thought to try."). It has done none of these. Less restrictive alternatives were never considered or reasonably rejected. Thus, this regulation is substantially more extensive than necessary and fails *Central Hudson*'s fourth prong and, therefore, is unconstitutional under intermediate scrutiny. *See Sorrell v. IMS Health Inc*., 564 U.S. 552, 566-72 (2011).

### C.    Measurement Against Its "Plainly Legitimate Sweep."

The Department may argue WAC 110(2)(b) has legitimate applications, including preventing a manufacturer from negotiating a final retail sale price for a dealer or completing a retail transaction without a dealer license. But those hypothetical applications—even if they pointed to a government interest—do not save the rule. They are either already addressed by narrower laws prohibiting unlicensed dealer activity, fraud, deception, or unlawful sales conduct (*see* RCW 46.70.021(1) (prohibiting unlicensed dealer activity); RCW 46.96.185(1)(g) (prohibiting manufacturers from acting as dealers)), or the Department could address them through targeted conduct-based rules that do not suppress manufacturers' truthful speech. For example, the rule could limit negotiations, contracting, title transfers, or other direct-sales *conduct*, but it does not. The unconstitutional applications of WAC 110(2)(b) predominate; they are far broader and far-reaching than any legitimate application the rule may have.

**III.    WAC 308-66-110(19) is Unconstitutional Under the First Amendment.[2]**

WAC 110(19) is unconstitutional under the First Amendment because it *compels* content-based speech without any compelling state interest. As before, because this is a facial challenge, the Court must first apply the *NetChoice, LLC* framework to determine whether a substantial number of the law's applications are unconstitutional in relation to its "plainly legitimate sweep." *NetChoice, LLC,* 144 S. Ct. at 2397.

**A.    The Scope of WAC 110(19).**

WAC 110(19) compels speech when manufacturers engage in "public education," a vaguely defined concept encompassing any activity that "increas[es] the public's knowledge of a vehicle's specifications, features, and capabilities, but does not include any activities in RCW 46.70.011(17)" (the provision that governs vehicle dealers). WAC 110(19) commands vehicle manufacturers, "[w]hen displaying or demonstrating vehicles for public education purposes[,]" to take "reasonable steps" to "inform the public that the manufacturer may not engage in any motor vehicle business activity" reserved for vehicle dealers. The terms "displaying" and "demonstrating" are undefined, which means manufacturers must guess whether ordinary marketing, informational, or experiential activities trigger constitutional obligations. There is also no direction for what qualifies as "reasonable steps" and no criteria by which compliance will be judged. Vehicle dealers and favored manufacturers—Tesla, Rivian, and Lucid—may freely engage in "public education" without any burdens on speech. *See* WAC 308-66-110(19).

**B.    Unconstitutional Applications of WAC 110(19).**

Freedom of speech includes the freedom not to speak. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). And while "there is certainly some difference between compelled speech and compelled silence, . . . in the context of protected speech, the difference is without constitutional significance[.]" *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781,

---

[2] Although the Thurston County Superior Court has invalidated WAC 110(19), Plaintiff's federal constitutional challenge remains live because the Department is appealing and continues to defend the rule. If the Department prevails on appeal, the compelled-disclosure requirement will return. This Court should therefore resolve Plaintiff's distinct federal constitutional challenge.

Motion for Summary Judgment - Page | 20
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

796-97 (1988). Content-based compelled speech is therefore subject to strict scrutiny. *See id.* at 795-798. To survive strict scrutiny, the Department must prove the compelled speech (1) concerns a compelling state interest, (2) is narrowly tailored to serve the compelling state interest, and (3) is the least restrictive means of achieving that interest. *Reed*, 576 U.S. at 171; *Ashcroft*, 542 U.S. at 666.

As discussed in Section II.B.1, the Department has not articulated a government interest in compelling this speech and the potential "interest" in administrative convenience the Department provided for the rulemaking is not "compelling" for free speech purposes. *Americans for Prosperity Foundation*, 594 U.S. at 614-615. There is also no link between the alleged government interest and the enacted rule. *See Brown*, 564 U.S. at 799; *see also Turner Broad. Sys., Inc.* 512 U.S. at 664. Moreover, the Department did not narrowly tailor the definition of "public education" to achieve any such interest, and several less restrictive alternatives exist. For example, the new rule states that when manufacturers are "displaying" or "demonstrating" vehicles, they must disclaim all "motor vehicle dealer business activity" defined in RCW 46.70.011(17), which includes a long statutory definition covering buying, selling, listing, exchanging, offering, brokering, leasing with an option to purchase, auctioning, soliciting, advertising, arranging, offering, attempting to solicit, and negotiating the sale, purchase, or exchange of vehicles. RCW 46.70.011(17). A less restrictive option would have been requiring a narrow, targeted disclosure about vehicles being available for purchase only through a licensed dealer, and only when manufacturers engage in specific, defined conduct such as participating in auto shows. WAC 110(19) is unconstitutional under strict scrutiny.

**C.     Measurement Against Its "Plainly Legitimate Sweep."**

The Department may contend that WAC 110(19) has legitimate applications because consumers should understand that manufacturers are not licensed dealers and may not complete dealer business activities. No confusion has been demonstrated on this point. Further, that interest, even if accepted, would support only a narrow and targeted disclosure tied to specific transactional

---

Motion for Summary Judgment - Page | 21
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

contexts where consumer confusion has been identified or is potentially likely. WAC 110(19) goes much further. It compels manufacturers to speak whenever they are "displaying" or "demonstrating" vehicles for "public education" purposes, without defining those triggering terms and without specifying what "reasonable steps" are required to provide this education.

As written, the Department could assert the rule applies to vehicle displays at auto shows, online videos, digital images, brochures, websites, static exhibits, social-media content, or other public-facing educational materials. In each setting, the rule compels a legal disclaimer about "motor vehicle dealer business activity" even when no sale, negotiation, financing discussion, or consumer transaction is occurring. That is not a narrow consumer-protection disclosure. It is a broad compelled legal message imposed only on manufacturers because of who they are and what they are saying. Any legitimate application is dwarfed by the rule's unconstitutional applications.

**IV.    WAC 308-66-110(2)(b) and 110(19) Are Void for Vagueness Under the Due Process Clause.**

WAC 110(2)(b) and WAC 110(19) both fail to provide clear and proper notice and invite arbitrary and discriminatory enforcement in violation of the Due Process Clause. These rules carry criminal penalties, lack a *mens rea* requirement, and infringe protected speech; they are "subject to facial attack" because "vagueness permeates" their text. *See City of Chicago v. Morales*, 527 U.S. 41, 55 (1999).

**A.    Due Process.**

The Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. V; U.S. CONST. amend. XIV, § 1. A law that (i) fails to give ordinary people fair notice of the conduct it punishes or requires; or (ii) is so standardless that it invites arbitrary enforcement, violates due process and is unconstitutional. *Johnson v. United States*, 576 U.S. 591, 595 (2015) (a law is vague if it requires "guesswork about its meaning or application"); *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (an impermissibly "vague" law is one that "delegates basic policy

matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."); *Kolender v. Lawson,* 461 U.S. 352, 358 (1983) (a regulation invites arbitrary enforcement if it fails to "establish minimal guidelines to govern law enforcement."). Where, as here, a regulation imposes criminal penalties or restricts constitutionally protected rights, "a more stringent vagueness test should apply." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 498-99 (1982); *see also Morales*, 527 U.S. at 55.

### 1.    Void for Vagueness - WAC 110(2)(b).

WAC 110(2)(b) prohibits vehicle manufacturers from "discussing" certain topics "on behalf of another person." The term "discussing" is not defined in RCW 46.70 or elsewhere in WAC 308-66. The Department has not issued guidance, interpretive rules, or enforcement standards to clarify the term. Indeed, during the open comment period stakeholders identified these concerns—that "discussing" is not defined—and the Department did not revise the rule to provide any clarity. *See, e.g.,* CAR 18-20; 349-350; 353-355; 363-365.

Consequently, vehicle manufacturers do not know whether "discussing" means two-way verbal communication or one-way written communication; individualized conversations or public communications; passive disclosures such as websites or advertisements; or responses to consumer-initiated inquiries, despite all such speech occurring routinely in the ordinary course of business. WAC 110(2)(b) does not answer these questions, so manufacturers cannot determine in advance what conduct is criminal and must guess at the regulation's application. *See FCC v. Fox Television,* 567 U.S. 239, 253 (2012) ("a regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved.")

### 2.    Arbitrary and Discriminatory Enforcement - WAC 110(2)(b).

WAC 110(2)(b) also establishes no guidelines for enforcement; the Department's verified testimony states that enforcement decisions will be made at their discretion based on the "totality

Motion for Summary Judgment - Page | 23
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

of the circumstances." *See* Stulberg Decl. at ¶ 8. Enforcement officials are free to decide, case by case, whether a manufacturer's speech constitutes "discussing," without governing standards. This invites inconsistent outcomes and permits officials to substitute personal subjective views for legislative or regulatory guidance, which is the paradigmatic example of a standardless regime. *See City of Rockford*, 408 U.S. at 108–09. Because the term "discussing" is undefined and the Department reserves for itself a standardless right to enforce its new rule, WAC 110(2)(b) is prone to *ad hoc* decision-making and invites arbitrary and discriminatory application in violation of due process. *See id.*

### 3.    Void for Vagueness - WAC 110(19).

WAC 110(19) does not define the terms "displaying" or "demonstrating" for triggering disclosure requirements when "publicly educating" Washington consumers. The term "displaying" could include digital images, online marketing materials, static exhibits, social-media content, or only the physical placement of a vehicle in a public space. The term "demonstrating" may mean virtual demonstrations, instructional videos, descriptive presentations of vehicle features, or it might be limited to physical interaction with a vehicle. Because "displaying" and "demonstrating" are not defined, manufacturers cannot know when their conduct triggers the compelled disclosure obligation. Moreover, even if a manufacturer could know when it was triggered, WAC 110(19) also provides no guidance on what constitutes "reasonable steps" to inform the public that it cannot engage in "motor vehicle dealer business activity" as defined in RCW 46.70.011(17). A regulation that leaves regulated parties to guess at both the trigger and the means of compliance fails to provide fair notice of criminal conduct and is void for vagueness. *See Johnson*, 576 U.S. at 595.

### 4.    Arbitrary and Discriminatory Enforcement - WAC 110(19).

WAC 110(19) establishes no guidelines for enforcement either, which invites arbitrary and discriminatory application. The regulation provides no standards for determining when a manufacturer is "displaying" or "demonstrating" a vehicle, what constitutes "reasonable steps" to

Motion for Summary Judgment - Page | 24
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

inform the public, or how criminal conduct will be measured. For example, as discussed in Section III.C., the Department could assert the rule applies to vehicle displays at auto shows, websites, social-media content, or other public-facing educational materials. In the absence of objective criteria, enforcement necessarily turns on the unguided discretion of individual officials. The Constitution forbids this type of regime. *City of Rockford*, 408 U.S. at 108–09. By failing to define its operative terms or provide any enforcement standards, WAC 110(19) delegates precisely that kind of unchecked discretion to enforcement officials, opening the door to arbitrary, inconsistent, and potentially discriminatory application in violation of due process.

**V.      WAC 308-66-110(2)(b) and 110(19) Are Invalid Under the Washington APA.**

WAC 110(2)(b) and WAC 110(19) exceed the Department's authority and are arbitrary and capricious under the Washington APA. *See* RCW 34.05.570(2), (4). Judicial review of these rules in a facial posture is expressly permitted under RCW 34.05.570(2).

**A.      The Department Exceeded its Statutory Authority (Ultra Vires).**

Courts may grant relief from agency rules that exceed the statutory authority of the agency (ultra vires). RCW 34.05.570(2)(c); *Stewart v. State, Dept. of Social & Health Services,* 162 Wash.App. 266, 252 P.3d 920 (2011) (an agency acts ultra vires when it exceeds its statutory authority). Here, the Department's rulemaking authority is limited by RCW 46.70.160, which authorizes the Department to adopt "any reasonable rules and regulations not inconsistent with the provisions of this chapter relating to the enforcement and proper operation thereof." An agency's rule that conflicts with a statute, as here, by undermining the regulatory regime governing the manufacturer-dealer relationship, is beyond that agency's authority and requires invalidation. *Edelman v. State ex rel. Public Disclosure Com'n,* 116 Wash.App. 876, 68 P.3d 296 (2003).

Recent action by the Washington Legislature granting Rivian and Lucid an exception to RCW § 46.96.185(1)(g)'s direct-sales prohibition further underscores why WAC 110(2)(b) and WAC 110(19) are much more than merely "reasonable rules" related to "enforcement and proper

Motion for Summary Judgment - Page | 25
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

operation." *See* Act of Mar. 24, 2026, ch. 186, 2026 Wash. Laws. That legislative action, together with the Department's prior enforcement posture (SUF ¶ 6), illustrates that significant changes to new motor vehicle sales activity belong to the Legislature, not the Department.

### 1. WAC 110(2)(b) Exceeded Statutory Authority.

RCW 46.70.160 authorizes the Department to adopt reasonable rules "not inconsistent with" chapter 46.70 RCW and related to its enforcement and proper operation. These statutes regulate dealer business activity for the purpose of promoting the public interest, the public welfare, and preventing frauds, impositions, and other abuses upon Washington citizens. *See* 46.70.005 RCW.

WAC 110(2)(b) is inconsistent with chapter 46.70 RCW's purpose and proper operation because it prevents manufacturers from communicating with consumers about vehicle purchases and their prospective ownership experience. These restrictions severely hinder transparency and accountability in the sale and distribution of motor vehicles by barring manufacturers from discussing pricing, financing and other issues while making dealerships the sole source of information regarding price, purchase terms, financing, inventory, and trade-ins. The Federal Trade Commission's recent letter-writing campaign to nearly 100-dealership groups nationwide shows the value of these manufacturer discussions. *See* Press Release, Fed. Trade Comm'n, *FTC Warns 97 Auto Dealership Groups About Deceptive Pricing* (Mar. 13, 2026). WAC 110(2)(b) is inconsistent with this basic and fundamental purpose of Washington franchise statutes.

### 2. WAC 110(19) Exceeded Statutory Authority.

The term "public education" does not appear in RCW 46.70, RCW 46.96, or anywhere else in WAC 308-66. Yet, it imposed a content-based, compelled-speech requirement on manufacturers when engaged in undefined "displaying" or "demonstrating" activities. There is no statutory basis for creating the category of "public education," for defining when manufacturers are "displaying" or "demonstrating" vehicles, or for compelling manufacturers to make specific disclosures to the public. Moreover, "public education" exceeded the Department's rulemaking

---

Motion for Summary Judgment - Page | 26
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

authority because it authorized vehicle manufacturers to engage in conduct reserved for vehicle dealers, as already found by a Washington state court. *See Washington State Auto Dealers Ass'n.*, Case No. 25-200164-34 at 4 ("Specifically, the rule authorizes manufacturers to engage in activities such as showing vehicles and demonstrating their capabilities and specifications, which has always been reserved by law for vehicle dealers."). This Court should similarly invalidate WAC 110(19) for exceeding the Department's statutory authority.

### B.    The Department Acted Arbitrarily and Capriciously.

Courts may also grant relief from agency rules that are arbitrary and capricious. RCW 34.05.570(2)(c). An agency action is arbitrary and capricious if it is "willful and unreasoning and taken without regard to the attending facts or circumstances." *Hillis v. State, Dept. of Ecology*, 131 Wash.2d 373, 383, 932 P.2d 139 (1997). When a rule is challenged as arbitrary and capricious, the reviewing court must consider the relevant portions of the rule-making file and the agency's explanations to determine whether the agency's action was willful and "unreasoning" and taken without regard to the attending facts or circumstances. *Washington Independent Telephone Ass'n. v. Washington Utilities and Transp. Com'n*, 148 Wash.2d 887, 64 P.3d 606 (2003). If the agency comes forward with unrefuted evidence such as testimony and reports demonstrating the need for the action, the agency's action will not be deemed arbitrary and capricious. *Southwick, Inc. v. Lacey¸* 795 P.2d 712, 895 (1990) ("The City offered testimony and reports stating that the cemetery's growth potential required the improvements. Southwick did not refute this evidence. Thus, the Council's action was not arbitrary and capricious.").

### 1.    WAC 110(2)(b) Is Arbitrary and Capricious.

The Department acted willfully and "unreasoningly" without regard to the attending facts and circumstances. The Record contains no complaints, enforcement actions, or evidence showing ambiguity or confusion among industry members. There is not a single example of non-compliance by any dealer or manufacturer, let alone the type resolved by the expanded definition of "soliciting." There is simply no evidence for Plaintiff to refute. *See id.* The Department cannot

Motion for Summary Judgment - Page | 27
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

even point to confusion, ambiguity, or non-compliance in the transcript made at the rulemaking hearing on December 6, 2024, or in any of the public comments submitted before or after the hearing. The transcripts and comments may reflect opposition to the rule from some vehicle dealers and manufacturers about the rule *itself*, or advocacy from private citizens who want to *change the law* to allow for test drives or direct sales to retail customers, but such consternation and citizen advocacy are not evidence of confusion, ambiguity, or non-compliance.

Indeed, the Record contains 228 public comments submitted via email prior to the hearing. CAR 30 to 64. Among those comments, 218 are from citizens who specifically advocate for a change to WAC 308-66-110 to allow for "test drives" and/or for the entire dismantling of the dealer franchise system. CAR 30 to 64. The remaining ten comments include nine from private citizens with essentially one-word statements such as "support" or "favor" (CAR, 67, 130, 137, 190, 210, 233, 257, 314, and 330), and one comment from Vicki Fabre on behalf of WSADA opposing the rule for similar reasons as those reflected in her testimony at the hearing on December 6, 2024. CAR, 356. None of these comments reflects "confusion," "ambiguity," or "non-compliance."

Even Rivian representatives made clear there was no confusion about Rivian's compliance with the existing framework. *See* CAR, 23 (The rule would be a "change" from existing practices to allow for "consumers in Washington to be able to be educated on the vehicle . . . that the Rivian vehicles provide," and "to be clear, Rivian is not flouting any of the franchise laws[,]" with its current operations in Washington.); *see also* Wash. State. S. Transp. Comm. Hr'g on S.B. 6304 at 01:21:31.680 (Feb. 1, 2024) (testimony of Hannah Steinweg in favor of direct sales legislation based on Rivian's inability to conduct test drives under current Washington law).

The overwhelming commentary about "test drives" shows *confusion about the rule's purpose¸* not confusion among "industry members" connected to regulatory compliance. Indeed, the Department responded to such comments by simply stating: "the Department is not authorizing test drives in this rulemaking." CAR, 641. The Record demonstrates the Department

Motion for Summary Judgment - Page | 28
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

enacted this rule without "regard for the attending facts or circumstances." *Hillis*, 131 Wash.2d at 383. Consumers did not understand the purpose of the rule; nor did vehicle dealers or vehicle manufacturers.

## CONCLUSION

The Department's rules cannot be sustained on this Record. WAC 110(2)(b) conflicts with federal law by prohibiting pricing communications the AIDA requires manufacturers to make. WAC 110(2)(b) and WAC 110(19) also impose content-based and speaker-based burdens on protected speech without evidence of any real problem, without narrow tailoring, and without adequate standards to guide regulated parties or enforcement officials. And under Washington law, the rules exceed the Department's statutory authority or are arbitrary and capricious. For the foregoing reasons, Plaintiff respectfully requests that the Court *grant* its Motion for Summary Judgment, declare WAC 110(2)(b) and WAC 110(19) invalid, and enter judgment in Plaintiff's favor on all claims. Counsel met and conferred regarding this motion on April 20, 2026.

DATED: June 9, 2026                     Respectfully submitted,

                                        SHOOK, HARDY & BACON L.L.P.

                                        By:  /s/  *Hunter Ahern*
                                             Hunter Ahern, WSBA #54489
                                             701 Fifth Avenue, Suite 6800
                                             Seattle, WA 98104
                                             Telephone: 206.344.7600
                                             Facsimile: 206.344.3113
                                             E-mail: hahern@shb.com

                                             Colm A. Moran (*Pro Hac Vice*)
                                             Jonathan R. Stulberg (*Pro Hac Vice*)
                                             2121 Avenue of the Stars, Suite 1400
                                             Los Angeles, CA 90067
                                             Telephone: 424.285.8330
                                             Facsimile: 424.204.9093
                                             E-mail: cmoran@shb.com
                                             E-mail: jstulberg@shb.com

Christopher R. Wray (*Pro Hac Vice*)
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
E-mail: cwray@shb.com

***Attorneys for Plaintiff***

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600

## LCR 7(e)(6) CERTIFICATION

I hereby certify that this memorandum contains less than 8,400 words excluding captions, tables of contents, tables of authorities, signature blocks, and certifications, in compliance with the Local Civil Rules.

/s/ *Jonathan Stulberg*
Jonathan Stulberg

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2026, I electronically filed the foregoing within the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Defendants' counsel of record: Jeremy Gelms (Jeremy.gelms@atg.wa.gov) and Jacob Dishion (jacob.dishion@atg.wa.gov).

/s/ *Jonathan Stulberg*
Jonathan Stulberg

Motion for Summary Judgment - Page | 31
(Case No. 2:25-cv-00750-LK)

Shook, Hardy& Bacon L.L.P.
701 5th Avenue, Suite 6800
Seattle, WA 98104-7066
206.344.7600